# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

Chip Rice and Linda Rice,

                Plaintiffs,

                                    Civ. No. 10-3830 (RHK/JJK)
                                    **MEMORANDUM OPINION
                                    AND ORDER**

v.

Greenhaven Group, LLC, James
Corriveau, and Tammy Hanson,

                Defendants.

---

Graham M. Martin, Martin Legal Services, LLC, Minneapolis, Minnesota, for Plaintiffs.

Christopher P. Parrington, Skjold Barthel, PA, Minneapolis, Minnesota, for Defendants.

---

## INTRODUCTION

      This action arises out of a "forensic mortgage analysis" provided by Defendants Greenhaven Group, LLC ("Greenhaven") and its employees, Tammy Hanson and James Corriveau.[1] Plaintiffs claim Defendants (1) violated the Credit Repair Organizations Act ("CROA"), 15 U.S.C. § 1679 *et seq.*; (2) violated the Minnesota Debt Settlement Services Law ("MDSSL"), Minn. Stat. § 322B *et seq.*; and (3) engaged in the unauthorized practice of law as prohibited by Minn. Stat. § 481.02. Defendants now move to dismiss each of Plaintiffs' claims. For the reasons set forth below, the Court will

---

[1] Rice also sued another Greenhaven employee, Talitha Davey; however, the claims against Davey have since been voluntarily dismissed. (Doc. Nos. 18, 19.)

deny the Motion in part, defer rulings on the remaining issues, and refer the matter to Magistrate Judge Jeffrey J. Keyes for a settlement conference.

## BACKGROUND

By way of background, Plaintiffs alleges the following:

In 2005, they incurred mortgage debts totaling approximately $634,000.[2] Sometime between 2005 and 2010, Plaintiffs' mortgage went into default and they faced foreclosure. Plaintiffs were introduced to Greenhaven "[i]n order to save their home." (Compl. ¶ 12). They hired Greenhaven to conduct a "forensic mortgage analysis," which was designed to look for violations of the Real Estate Settlement Procedures Act ("RESPA") and the Truth in Lending Act ("TILA") in the Plaintiffs' mortgage and closing documents. Corriveau and Hanson explained to Plaintiffs that if such violations were found, Plaintiffs could use them to reduce the amount they owed or even to completely satisfy their mortgage.

Plaintiffs contracted with Greenhaven on April 28, 2010,[3] and they were "induced" to make advanced payments for Defendants' services. As part of their agreement with Greenhaven, Plaintiffs also signed an Indemnification and Hold Harmless Agreement, waiving "all rights to make demands, sue, or otherwise hold [Greenhaven] liable in any way for any real estate, mortgage, loan, consumer credit, or similar advice,

---

[2] It is unclear whether this amount arose from one or multiple mortgages or was related to one or multiple properties. For ease of reference, the Court refers to the debts as a single mortgage.

[3] As Defendants repeatedly highlight, the copy of Plaintiffs' contract attached to their Complaint as Exhibit A is unsigned. In fact, Plaintiffs allege that they were never provided a signed copy of the contract. (Compl. ¶ 31.)

action, process, remedy or similar engagement in which [Plaintiffs] may have participated." (Compl. Ex. B.)

In May 2010, Defendants advised Plaintiffs to attempt to extend the sheriff's sale of their home. Talitha Davey, a Greenhaven employee, e-mailed Plaintiffs a pre-drafted RESPA Qualified Written Request and instructions. The pre-drafted documents noted Plaintiff Linda Rice's name as the party who had drafted them, even though they were already completed when Plaintiffs received them. Plaintiffs tried several times to file these documents pursuant to Defendants' instructions, but their efforts were unsuccessful.

Plaintiffs also received other documents drafted by Defendants, including a Full Reconveyance, a Notice of Revocation of Power of Sale, a Notice of Revocation of Power of Attorney, a Substitution of Trustee, and Affidavits of Mailing; all were e-mailed to Plaintiffs from Davey. Davey is not a licensed attorney in the state of Minnesota, nor is Corriveau or Hanson.

Plaintiffs claim that Defendants' conduct placed a strain on their family relationships and caused them to experience severe emotional distress, including anger, anxiety, fear, frustration, humiliation, embarrassment, and "other negative emotions." (Compl. ¶ 61.) As a result, Plaintiffs filed the instant action, asserting violations of CROA and the MDSSL and unauthorized practice of law. Defendants now move to dismiss for failure to state a claim.

## STANDARD OF REVIEW

The Supreme Court set forth the standard for evaluating a motion to dismiss under Rule 12(b)(6) in <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544 (2007). To avoid

dismissal, a complaint must include "enough facts to state a claim to relief that is plausible on its face." Id. at 547. A "formulaic recitation of the elements of a cause of action" is not sufficient. Id. at 555. Instead, there must be adequate facts set forth in the complaint to "nudge[] the[] claims across the line from conceivable to plausible." Id. at 570. The Eighth Circuit has added that a plaintiff must "assert facts that affirmatively and plausibly suggest that the pleader has the right he claims . . . , rather than facts that are merely consistent with such a right." Stalley v. Catholic Health Initiatives, 509 F.3d 517, 521 (8th Cir. 2007) (citing Twombly, 550 U.S. at 554–57). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). However, the Eighth Circuit also recently cautioned that "Twombly and Iqbal did not abrogate the notice pleading standard of [Federal Rule of Civil Procedure] Rule 8(a)(2)," which requires simply a "short plain statement of the claim showing that the pleader is entitled to relief." Hamilton v. Palm, 621 F.3d 816, 817 (8th Cir. 2010).

For purposes of a motion to dismiss, "courts must accept a plaintiff's specific factual allegations as true but are not required to accept a plaintiff's legal conclusions." Brown v. Medtronic, Inc., __ F.3d __, 2010 WL 5059594, at *7 (8th Cir. Dec. 13, 2010) (citing Twombly, 550 U.S. at 556). A complaint must be construed liberally, and any allegations or reasonable inferences arising from it must be interpreted in the light most favorable to the plaintiff. Twombly, 550 U.S. at 554–56. "Documents attached to or incorporated within a complaint are considered part of the pleadings, and courts may look at such documents 'for all purposes,' including to determine whether plaintiff has stated a

plausible claim." Brown, __ F.3d __, 2010 WL 5059594, at *7 (citations omitted).

## ANALYSIS

Defendants seek dismissal of Count I (alleging violations of CROA) because, in their view, no Defendant is covered by CROA. They argue that Plaintiffs have failed to plead sufficient facts to show that any Defendant is a "credit repair organization" as that term is defined by CROA. The Court addresses this argument with respect to Defendant Greenhaven only.

> CROA provides that the term "credit repair organization"
> 
> (A) means any person who uses any instrumentality of interstate commerce or the mails to sell, provide, or perform (or represent that such person can or will sell, provide, or perform) any service, in return for the payment of money or other valuable consideration, for the express or implied purpose of –
> 
> > (i) improving any consumer's credit record, credit history, or credit rating; or
> > 
> > (ii) providing advice or assistance to any consumer with regard to any activity or service described in clause (i).

15 U.S.C. § 1679a(3)(A).

Plaintiffs expressly plead that Greenhaven "is a 'credit repair organization' as that term is defined by 15 U.S.C. § 1679a(3)." (Compl. ¶ 6.) Greenhaven argues that this is merely a "legal conclusion" and thus inadequate to satisfy Twombly. However, similar assertions have been found sufficient to satisfy Twombly's pleading standards. E.g., Zhong v. Aug. Aug. Corp., 498 F. Supp. 2d 625, 629 (S.D.N.Y. 2007) (finding complaint's assertion that "[a]t all times relevant to this action, Defendant was an enterprise covered by the [Fair Labor Standards Act] as defined by 29 U.S.C. §§ 203(r)

5

and 203(s)" sufficient to properly allege the element of an FLSA claim requiring engagement in an enterprise involving commerce).

Regardless, even if simply asserting that Greenhaven meets the statutory definition of a credit repair organization was not enough, Plaintiffs have also pleaded sufficient facts to plausibly support concluding that Greenhaven falls within CROA. Specifically, Plaintiffs allege that: they contracted with Greenhaven to help them "repair their credit among other things" (Compl. ¶ 13); Greenhaven agreed to "educate Plaintiffs on possible methods to restore or protect Plaintiffs' credit score related to their property" (id. ¶ 22); and Greenhaven agreed that it may "share with Plaintiffs credit and repair and restoration processes" (id. ¶ 23).[4]

Greenhaven argues that other assertions in the Complaint are inconsistent with its services being "in any way related to [Plaintiffs'] credit record, history, or rating." (Mem. in Supp. at 8.) It points to Plaintiffs' claims that they hired Greenhaven to provide "forensic mortgage analysis," "to point out violations of [RESPA] and [TILA]" in their mortgage documents, and to "provide advice" that might help Plaintiffs settle their debts. (See Compl. ¶¶ 16–19.) Yet any advice or services to help Plaintiffs avoid foreclosure or settle their mortgage debts would necessarily impact Plaintiffs' credit. These assertions

---

[4] Defendants urge the Court to ignore paragraphs 22 and 23 of the Complaint because they refer to Exhibit A, the document Plaintiffs claim represents their contract with Greenhaven. (Compl. ¶ 20.) Defendants argue that since Exhibit A is unsigned, it is not a valid contract. However, Defendants make no attempt to argue that they did not contract with Plaintiffs or that Exhibit A does not fairly represent their agreement. In fact, Defendants acknowledged at oral argument that there is a signed contract between Plaintiffs and Greenhaven with the same terms and conditions as those in Exhibit A. For purposes of a Motion to Dismiss, the Court must construe the Complaint liberally, Twombly, 550 U.S. at 554–56, and documents attached to or incorporated into pleadings are also to be considered. Brown, 2010 WL 5059594, at *7. The Court will consider Exhibit A and the portions of the Complaint referencing it.

are entirely consistent with pleading that Greenhaven's services were sufficiently related to Plaintiffs' credit to meet CROA's definition. Moreover, whether or not Plaintiffs pleaded that Greenhaven actually did provide such advice or services is immaterial, despite Defendants' suggestion to the contrary, because CROA also applies to "*represent[ing]* that such person can or will sell, provide, or perform" the covered services. 15 U.S.C. § 1679a(3)(A) (emphasis added).

Greenhaven also argues that Plaintiffs failed to allege additional elements necessary to a CROA claim, namely: (a) use of the mails or an instrumentality of interstate commerce; and (b) payment of valuable consideration. (Mem. in Supp. at 8–9.) Yet Plaintiffs plainly pleaded that they "communicated via mail, telephone" with Defendants. (Compl. ¶ 14.) They also pleaded that they "were induced into making advanced payment for the services described in the contract, including but not limited to credit repair services." (Compl. ¶ 26.)[5] In the Court's view, each of these assertions satisfies Rule 12(b)(6)'s pleading requirement.

Finally, Greenhaven contends that because it provided only prospective advice and counseling, it is not a "credit repair organization" within CROA's definition, relying heavily on Hillis v. Equifax Consumer Services, Inc., 237 F.R.D. 491, 513–15 (N.D. Ga. 2006). However, "[t]he plain language of CROA demonstrates that Congress intended to cast a wide net in determining what behavior might trigger liability under the statute."

---

[5] Defendants attempt to argue that by merely pleading they were "induced into making" payment, Plaintiffs failed to plead that they actually made payment. (Reply Mem. at 9.) Suggesting that the phrase "I was induced into making payment" does not mean "I made payment" defies common sense. The Court rejects this invitation to perform semantic gymnastics in order to avoid the phrase's obvious meaning.

7

Zimmerman v. Cambridge Credit Counseling Corp., 529 F. Supp. 2d 254, 273 (D. Mass. 2008), aff'd sub nom. Zimmerman v. Puccio, 613 F.3d 60 (1st Cir. 2010). Indeed, CROA covers "*any* person" who provides or even "*represents* that such person can or will sell, provide, or perform" services "for the express *or implied* purpose[s]" that are targeted. 15 U.S.C. § 1679a(3)(A) (emphases added). CROA is part of "a sweeping consumer protection act," which should be "construed liberally in favor of consumers." Zimmerman, 613 F.3d at 71 (citations omitted). In this Court's view, Hillis is an "outlier." Id. at 72 n.14. Its distinction between retroactive credit "repair" services and services aimed at improving credit prospectively has recently been deemed "unsupportable" by at least one Circuit Court, id. at 71–72, and the Court concurs with that assessment.

In short, none of Greenhaven's arguments persuades the Court that Plaintiffs have not sufficiently pleaded a claim against it for violating CROA.

Because the Court concludes that Plaintiffs' CROA claim against Greenhaven will survive, at least some of this case will remain before this Court. However, the Court declines to rule on the Motion with respect to the remaining claims against Greenhaven or the claims against Corriveau and Hanson at this juncture. The parties have raised, but inadequately developed, arguments implicating complex legal issues, including LLC veil piercing[6] and federal preemption. Moreover, based on the submissions currently before the Court and counsels' representations at oral arguments, it appears that the potential

---

[6] The issue of veil piercing came up for the first time at the December 22, 2010, hearing on this Motion and was nowhere addressed in Plaintiffs' papers.

damages Plaintiffs seek are limited and the parties are open to resolving the matter.[7] In light of these facts, as well as the Court's views expressed at the December 22 hearing, the interests of the parties involved may be best served by seeking resolution of this matter without proceeding further into contentious and costly litigation.

## CONCLUSION

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS ORDERED** that:

(1) Defendants' Motion to Dismiss (Doc. No. 6) is **DENIED IN PART** with respect to Plaintiffs' CROA claims against Defendant Greenhaven (Doc. No. 1, Count I);

(2) the Court **DECLINES TO RULE** on the Motion with respect to the remaining claims against Greenhaven or the claims against Defendants Corriveau and Hanson at this time. The matter is **REFERRED** to Magistrate Judge Jeffrey J. Keyes for an early settlement conference at such time and upon such conditions as Judge Keyes directs. The parties shall advise the Court of the outcome of their settlement conference and, if necessary, the Court will address the remaining portions of this Motion at that time.

Dated: January 6, 2011                           s/Richard H. Kyle
                                                 RICHARD H. KYLE
                                                 United States District Judge

---

[7] Plaintiffs' counsel indicated at the hearing that Plaintiffs hope to recover $3,000 they paid Greenhaven, as well as statutory damages under CROA, and identified no other damages. Defense counsel acknowledged that if the case survived the instant Motion, a settlement conference would be "absolutely appropriate."